**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
<u>Alexandria Division</u>**

| | |
|---|---|
| **CRAIG SANFORD,** ) | |
| **MARY JO SANFORD,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | |
| **SCG INTERNATIONAL, LLC,** ) | **C. A. No. 1:10cv940 GBL/IDD** |
| ) | |
| **and** ) | |
| ) | |
| **JAMES F. SMITH, JR.,** ) | |
| ) | |
| **Defendants.** ) | |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants SCG International, LLC ("SCG") and James F. Smith, Jr. ("Smith") (collectively "Defendants"), by counsel, submit this Reply in Support of Defendants' Motion to Dismiss ("Motion"). For the reasons stated below, Defendants' Motion should be granted.[1]

Plaintiffs' Memorandum in Opposition to the Defendants' Motion to Dismiss ("Opp. Brief") (Docket No. 82) seeks, in at least three ways, to divert the Court's attention away from Plaintiffs' Amended Complaint and the black-letter law requiring dismissal. First, Plaintiffs parade in front of the Court a few irrelevant "facts" and insinuations, none of which are part of the allegations in the Amended Complaint, in hope that the Court will ignore the actual pleadings. Second, Plaintiffs engage in wild and unsupported speculation regarding SCG's intent in entering the contract, when that intent is stated in the clear and unambiguous terms of

---

[1] Defendants incorporate by reference their Reply in Support of their Motion to Transfer, which is being filed contemporaneously with this reply.

the Promissory Note. And third, Plaintiffs misread and misapply numerous cases, again hoping that the Court will ignore doctrines such as the economic loss rule and unclean hands. Defendants are confident the Court will see through Plaintiffs' misguided efforts.

Remarkably, Plaintiffs never contest that their purpose behind entering into the Promissory Note with SCG was to secret away money from a Pennsylvania judgment. Instead, Plaintiffs argue that public policy supports such conduct. It does not. *See, e.g., NLRB v. Laborers' Int'l Union of N. Am., AFL-CIO,* 882 F.2d 949, 954 (5th Cir. 1989) (holding "it is contempt to act solely for the purpose of evading a judgment."); *Kreditverein Der Bank Austria Creditanstalt Fur Niederostereich Und Burgenland v. Nejezchleba*, No. Civ. 04-72JRTJSM, 2004 WL 1765452, *4 (D. Minn. July 29, 2004) (concluding that plaintiff had not acted "to hide, disperse or otherwise make unavailable her assets" from a judgment, which would have constituted unlawful behavior).

Because of Plaintiffs' rush to hide this money, they failed to negotiate and/or include terms in the contract that they now attempt to incorporate through parol evidence. And when faced with the reality of the economic loss rule, Plaintiffs seek to invent common law duties that clearly do not exist between a lender and a borrower, absent some further relational ties. Plaintiffs' efforts simply fail to breathe life back into their Amended Complaint.

### A. Plaintiffs cite to irrelevant "facts."

Defendants agree that this Motion must be evaluated based upon the facts pled by Plaintiffs in their Amended Complaint. Recognizing the deficiency of those facts, Plaintiffs seek to add facts to the case in an effort to disparage SCG and its owner. But these added allegations are simply irrelevant to this Motion and the case.

For example, Plaintiffs cite to criminal proceedings against a former SCG employee, Troy Titus. *See* Opp. Brief at 3. Of course Plaintiffs fail to mention that those criminal proceedings had zero to do with SCG or the Promissory Note at issue here. Likewise, Plaintiffs rehash already resolved *discovery issues* in this case, as if those issues were germane to this Motion.[2] They are not.

> **B.      Plaintiffs' speculation regarding SCG's intent and their desire to incorporate additional obligations into the contract are undermined by the terms of the Promissory Note.**

"When a court considers a written contract, the intent of the parties is presumed to be embodied in the contractual terms." *Foreign Mission Bd. of the S. Baptist Convention v. Wade*, 409 S.E.2d 144, 146 (Va. 1991). Plaintiffs repeatedly speculate throughout their Opposition Brief that SCG (and Smith) never intended on repaying the Promissory Note. *See, e.g.,* Opp. Brief at 2, 6-7. Plaintiffs' speculation conflicts with the expressed terms of the Promissory Note in which Defendant SCG committed to repay the note with interest by May 27, 2009. Thus, the

---

[2] Plaintiffs' claim that Mr. Smith failed three times to appear for a deposition is Plaintiffs' unfortunate "spin" of the record. Mr. Smith was present on December 8, 2010, but requested his deposition be taken after he retained new counsel (to which Plaintiffs' counsel consented). Plaintiffs' immediately renoticed his deposition for December 30, 2010, despite the fact that new counsel had not yet appeared. While it is true that Mr. Smith did not appear on December 30, 2010, Mr. Smith was able to retain his current counsel on that date and an appearance was entered. A new deposition date of February 10, 2011 was set. On the evening of February 9, 2011 and into the morning of February 10, 2011, the Hampton Roads area was hit with several inches of snow atop a layer of ice. Schools were closed and a winter snow advisory was issued until 10:00 a.m. that morning. Plaintiffs' counsel was notified shortly after 6:00 a.m. of this weather development. But Plaintiffs apparently expected Mr. Smith and his counsel to ignore the National Weather Service and travel 200 miles to Fairfax, despite the fact that the discovery cutoff was still over two months away. Mr. Smith's deposition was rescheduled less than two weeks later and taken on February 23, 2011.

3

Promissory Note is the best evidence of SCG's intent when it entered the contract — to repay the Note with the stated interest.[3]

If Plaintiffs were concerned about SCG's intent or ability to repay the Note, there are numerous provisions Plaintiffs could have insisted be included in the Promissory Note. For example, Plaintiffs could have insisted Defendant Smith personally guarantee the Note. They did not. Plaintiffs also could have insisted on some form of collateral. Again, they did not. And Plaintiffs could have required SCG to provide periodic detailed statements regarding the status of the funds. But because they were much more concerned about hiding these funds from a Pennsylvania judgment, they did not even propose such terms.

Plaintiffs' citation to *Allen Realty v. Holbert* is misplaced. *See* Opp. Brief at 7-8. Plaintiffs cite to *Allen Realty* for the proposition that concealment or omission of a material fact may give rise to a fraud claim where a contract is involved. *See id.* In *Allen Realty*, defendant Holbert concealed from plaintiff Allen that several additional offers had been received for the purchase of Allen's property. 318 S.E.2d 592, 597 (Va. 1984). Had Allen known of these offers, it would not have sold its property for the price it did. *Id.*

In contrast to the concealment or omission of a material fact (i.e., the existence of actual offers for the property), here Plaintiffs claim the concealed or omitted "fact" is that SCG never

---

[3] For some unknown reason, Plaintiffs continue to incorrectly state that the parties entered into the Promissory Note on November 21, 2007, but the Plaintiffs forwarded the $12.5 million to SCG on or about November 14, 2007. *See* Opp. Brief at 2, 6. And Plaintiffs continue to attach to their pleadings a partially executed copy of the Promissory Note, which does not contain their signatures. The only explanation Defendants can attach to this repeated misrepresentation is that Plaintiffs want the Court to have the errant impression that the funds were forwarded by the Plaintiffs to SCG before contract formation. This is blatantly false. And Plaintiffs have copies of the fully executed Promissory Note, showing their notarized signatures and dated November 14, 2007, which Defendants attached to their Answer to the Original Complaint.

intended on repaying Plaintiffs under the Promissory Note nor did SCG intend on investing the loan proceeds in an "ongoing commercial enterprise." *See* Opp. Brief at 8. First, this is sheer speculation about a future event and not a fact in existence at contract formation. Second, as discussed above, SCG's intent is expressed in the unambiguous terms of the Promissory Note — that it would repay the funds with interest by May 27, 2009. Plaintiffs' speculation about SCG's intent does not constitute a fact.

If Plaintiffs' argument, that SCG never intended to honor the contract, were to be accepted as opening the door to tort duties, the economic loss rule would be emasculated. All future plaintiffs would need to do to turn a contract action into a tort case would be to claim that the defendant never intended to honor the contract. But that is not the law. As will be discussed *infra*, for a duty under tort to exist pursuant to a contract, the tort action must involve a common law duty that exists outside the contract. *See Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). No common law duties are present here.

      **C.**    **Plaintiffs' strained reading of case law does not birth tort causes of action from a contract nor does it eliminate the soil from Plaintiffs' unclean hands.**

Plaintiffs cite a number of cases that stand for the proposition that causes of action can exist both in contract and tort in the same case. But in each of those cases, there is a relationship between the parties that created an independent tort duty. For example, in both *Owen v. Shelton*, 277 S.E.2d 189 (Va. 1981) and *H-B Ltd. Partnership v. Wimmer*, 257 S.E.2d 770 (Va. 1979), defendants were real estate brokers/agents, who have independent fiduciary duties to their clients, outside of any real estate contract. In *Sea-Land Service, Inc. v. O'Neal*, 297 S.E.2d 647 (Va. 1982), the defendant was plaintiff's employer, a relationship creating common law duties outside of any employment contract. But none of the cases Plaintiffs cite in their Opposition Brief stand for the proposition that a borrower has any independent common law duties to a

lender outside the obligations contained in the loan documents. Here, the only relationship between Plaintiffs and Defendant SCG is that of lender and borrower. And Defendant Smith had no legal relationship with Plaintiffs. Thus, under the economic loss rule, any cause of action here sounds exclusively in contract.

Plaintiffs also cite cases where potentially fraudulent statements were made to induce performance under the contract. For example, in *Augusta Mutual Insurance Co. v. Mason*, 645 S.E.2d 290 (Va. 2007), defendant, in order to receive payment, stated that work had been completed on a construction project according to the standards required by the contract, when in fact it had not. *See id.* at 293. Plaintiff relied on this misrepresentation and made payment under the contract. *See id.* at 294. But because the misrepresentations involved obligations enumerated in the contract, no independent tort action existed. *See id.* at 294-95. Thus, even fraudulent representations made during the term of the contract, did not give rise to a tort action.

While Plaintiffs acknowledge that unclean hands can prevent a plaintiff from recovering for claims in equity, they attempt to draw a distinction between their improper act of using the Promissory Note to hide money from a Pennsylvania judgment and enforcement of that same Promissory Note. *See* Opp. Brief at 5. But Plaintiffs' Amended Complaint seeks through a breach of contract claim (Count V) to enforce the very Promissory Note Plaintiffs entered into for an improper purpose. The nexus between forming the Promissory Note and enforcing that same note is anything but remote, it is direct.[4] Plaintiffs' unclean hands bar any equitable relief in this matter.

---

[4] Plaintiffs fail to even reference the recent and well-reasoned *Morris-Griffin Corp. v. C&L Service Corp.*, 731 F. Supp. 2d 488 (E.D. Va. 2010) case, which Defendants submit is most instructive regarding unclean hands.

**Conclusion**

For the reasons stated herein and in their opening brief, Defendants James F. Smith, Jr. and SCG International, LLC respectfully ask this Court to dismiss this matter with prejudice.

Dated: February 28, 2011							Respectfully submitted,

**SCG INTERNATIONAL, LLC**
**JAMES F. SMITH, JR.**

    /s/ Brent L. VanNorman
Brent L. VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, Virginia  23510
Telephone: (757) 640-5343
Facsimile: (757) 625-7720
bvannorman@hunton.com

*Counsel for SCG International, LLC & James F. Smith, Jr.*

7

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of February, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

J. Chapman Petersen (VSB #37225)
Jason Zellman (VSB #77499)
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Suite 200
Fairfax, Virginia  22030
Telephone:  (703) 251-5400
Facsimile: (703) 591-9285
jpetersen@smillaw.com
jzellman@smillaw.com

*Counsel for Plaintiffs*


          /s/ Brent L. VanNorman
Brent L. VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, Virginia  23510
Telephone:  (757) 640-5343
Facsimile:  (757) 625-7720
bvannorman@hunton.com

*Counsel for Defendants*
*SCG International, LLC and*
*James F. Smith, Jr.*