**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
<u>Alexandria Division</u>

| | |
|---|---|
| **CRAIG SANFORD,** ) | |
| **MARY JO SANFORD,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **SCG INTERNATIONAL, LLC,** ) | **C. A. No. 1:10cv940 GBL/IDD** |
| ) | |
| **and** ) | |
| ) | |
| **JAMES F. SMITH, JR.,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM IN SUPPORT OF**
<u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

Defendants SCG International, LLC ("SCG") and James F. Smith, Jr. ("Smith") (collectively "Defendants"), by counsel, pursuant to Fed. R. Civ. P. 56(a), respectfully submit this Memorandum in Support of Defendants' Motion to for Summary Judgment ("Motion").  For the reasons stated below, Defendants' Motion should be granted.

**I.      Preliminary Statement**

<u>Plaintiffs' Loan to SCG</u>

In the fall of 2007, Plaintiffs Craig and Mary Jo Sanford ("Plaintiffs") were looking for a way to hide $12.5 million from a judgment that had been entered against them in Bucks County, Pennsylvania.  At a police training event in their home town, Mr. Sanford met SCG personnel and shortly thereafter, agreed to loan SCG $12.5 million at an interest rate of .1% per annum. Plaintiffs did not ask Smith to personally guarantee this loan nor did Plaintiffs secure the loan with any collateral.  In fact, they executed a Promissory Note ("Note") without even consulting

with an attorney.  And the only stated purpose for the loan was "investing in an ongoing commercial enterprise."

Upon receiving the $12.5 million loan from Plaintiffs, SCG placed $10 million in a trust account with First Security Bank under a "moderate growth" plan objective.  If history repeated itself, the trust fund would grow enough to repay the loan by its maturity date.  The other $2.5 million was invested in growing SCG, which should also produce a return that would assist with repaying the Promissory Note.  But history did not repeat itself.  Instead, the stock market and economy began its unforeseen spiral downwards.

Recognizing that the trust account at First Security Bank was diminishing instead of growing, SCG transferred $5 million to a larger investment firm, Credit Suisse, in the hopes that a more experienced firm would reverse the trend.  It did not.  With losses mounting and the clock for repayment ticking, SCG decided it needed to take greater risks if it was going to repay the Sanfords.  So it took portions of the remaining funds and began investing in real estate ventures that had the potential for significant returns.  First, in Hawaii, then in Virginia Beach. Additionally, one of SCG's sister companies (Chain Bridge, LLC) borrowed money from SCG to purchase land for a training center in Holly Springs, Mississippi.  Substantial funds (in excess of $1.7 million) were invested in the land and building for the training center.  Unfortunately, the real estate market faired no better than the stock market, and in some cases, worse.  And as each of these properties also carried a mortgage of some type, eventual foreclosure or other legal proceedings resulted in more and greater losses.

At the end of the day, the majority of the $12.5 million was lost — mostly in the stock and real estate markets.  And the money invested in SCG has yet to pay the anticipated return. Bottom line — SCG could not repay the Promissory Note when it became due.

**The Lawsuit**

Plaintiffs, in their Amended Complaint, made numerous scandalous accusations against Defendants SCG and particularly against Defendant Smith.  *See, e.g.,* Amended Complaint ¶ 5.  But not only did discovery demonstrate the falsity of these accusations, when provided with an opportunity to uncover "proof" of these allegations, Plaintiffs chose not to.  In Smith's deposition, taken February 23, 2011, Plaintiffs did not ask a single question directed to the allegations of Paragraph 5 of the Amended Complaint (e.g., Smith's education at Harvard, involvement with the CIA, involvement with Blackwater USA, etc.).  And Plaintiffs have produced zero evidence to support their claims that Smith falsely represented either his credentials or SCG's capabilities to Plaintiffs before they signed the Promissory Note.  Plaintiffs' fraud claim, therefore, lacks any evidentiary support.

Likewise, Plaintiffs have no evidence that there was anything more than a contractual relationship between Plaintiffs and Defendant SCG.  There was simply no fiduciary relationship between Plaintiffs and Defendants.  Under the Promissory Note, Plaintiffs were the "lender" and SCG was the "borrower."  Borrowers do not have fiduciary duties to lenders outside of contractual duties prescribed in the lending document(s).  And other than repayment terms, the only stated purpose in the Promissory Note was "investing in an ongoing commercial enterprise."  Even Plaintiff Craig Sanford had to admit in his deposition that SCG was an "ongoing commercial enterprise."  Thus, the existence of a fiduciary duty cannot be read into the Promissory Note.

Additionally, under both Pennsylvania's and Virginia's economic loss rule, Plaintiffs cannot extend a breach of contract claim into tort claims.  Thus, as Plaintiffs provided funds to SCG under a Note, any losses associated with that Note must be pursued solely in contract and

cannot be converted into tort claims.  What SCG did with the money received under the Note is material only to the extent a duty is expressly stated in the Note.  And again, the Note only states a general purpose of "investing in an ongoing commercial enterprise," which Plaintiffs did by providing the funds to SCG.[1]  SCG's sole duty under the Note was to repay it by May 27, 2009 at .1% annual interest.  As such, summary judgment for Defendants on tort Counts I and III is proper.

But even Plaintiffs' Breach of Contract count suffers its own frailty.  Admittedly, SCG has not repaid the balance due under the Promissory Note.  However, Plaintiffs, in their Amended Complaint, candidly confess that their motivation for entering into the Promissory Note with SCG was to hide their resources to avoid a judgment from other litigation.  Such conduct violates public policy as the contract was entered into for an improper purpose, making the Note (i.e., contract) entered into unenforceable.  Further, Plaintiffs have unclean hands based on their purported evasion of a Pennsylvania judgment.[2]  Thus, equitable remedies sought by Plaintiffs (e.g., Count III — Breach of Fiduciary Duty) are unavailable.

Plaintiffs attempt to hold Smith personally liable, without piercing the corporate veil, for his acts performed on behalf of Defendant SCG.  But unless the corporate veil is pierced, Smith is shielded from liability for acts performed in his capacity as an officer of SCG.  Plaintiffs have a contractual relationship and thus are in privity only with SCG.  And Plaintiffs have not even alleged, much less proven, any of the factors required to pierce a corporate veil (e.g., failing to

---

[1]  The Note does not define what is meant by "an ongoing commercial enterprise."

[2]  At the March 4, 2011 Hearing on Defendants' Motion to Dismiss, Plaintiffs' counsel stated that the judgment in Pennsylvania had not been entered at the time Plaintiffs executed the Promissory Note.  But discovery has shown this representation to be incorrect.  The Pennsylvania judgment was entered October 16, 2007, approximately one month *before* Plaintiffs executed the Promissory Note on November 14, 2007.

follow corporate formalities, undercapitalization, comingling of funds, etc.).  As such, summary

judgment in favor of Defendant Smith is appropriate on all counts.

## II.        Statement of Undisputed Material Facts

1.        On November 14, 2007, Plaintiffs Craig Sanford and Mary Jo Sanford and

Defendant SCG International, LLC executed a Promissory Note.  *See* Promissory Note, attached

at Exhibit 1; Deposition of Craig Sanford ("Sanford Dep.") at 27:21-29:2, attached at Exhibit 2.[3]

2.        The Sanfords did not consult with an attorney before executing the Promissory

Note.  Sanford Dep. at 28:12-15.

3.        Under the Promissory Note, the Borrower was SCG International, LLC and the

Lender(s) were Craig Sanford and Mary Jo Sanford.  *See* Promissory Note.

4.        The Promissory Note was for $12,500,000.00.  *See id.*

5.        The purpose of the Promissory Note was to invest "in an ongoing commercial

enterprise."  *See id.*

6.        The interest rate stated in the Promissory Note was 0.1% per annum.  *See id.*

7.        Repayment of the Promissory Note was to occur in one installment of

$12,518,767.12 on May 27, 2009.  *See id.*

8.        The Promissory Note could only be modified through a written agreement signed

by both the Borrower and Lender(s).  *See id.*

9.        The only written agreement between Borrower and Lender(s) is the November 14,

2007 Promissory Note.  *See* Sanford Dep. at 55:6-13.

---

[3] The Exhibits attached hereto appeared on Defendants' Exhibit List.  Plaintiffs have not
objected to any of these exhibits.  Thus, under the Court's Scheduling Order, they are deemed
admitted.

10.    The Promissory Note did not require SCG to invest funds in an offshore investment account.  *See id.* at 53:2-12.

11.    The Promissory Note did not require SCG to provide periodic updates to the Sanfords regarding the status of the loan.  *See id.* at 55:19-56:12.

12.    The Promissory Note did not require SCG to buy a business.  *See id.* at 67:16-18.

13.    No payment was due under the Promissory in 2008.  *See id.* at 68:18-69:6.

14.    On October 16, 2007, a judgment for $3,030,000.00 was entered against Craig Sanford and Mary Jo Sanford in Bucks County, Pennsylvania.  *See* Order dated October 16, 2007, attached at Exhibit 3.

15.    At the time the Promissory Note was executed, Plaintiffs were attempting to shelter their funds from a $3,030,000.00 judgment that had been entered against them in the Court of Common Pleas of Bucks County, Pennsylvania.  *See* Amended Complaint ¶ 4; Sanford Dep. at 34:6-12; 35:2-6; 35:19-36:21.

16.     At the time the Promissory Note was executed, November 14, 2007, SCG International, LLC was "an ongoing commercial enterprise."  Sanford Dep. at 66:13-21.

17.    Shortly after receiving the $12,500,000.00 from Plaintiffs under the Promissory Note, Defendant SCG International, LLC placed $10,000,000.00 of these funds in a Trust Account with First Security Bank in Batesville, Mississippi.  Sanford Dep. at 73:17-74:12; Deposition of Thad Campbell ("Campbell Dep.") at 13:14-17, attached at Exhibit 4.

18.    Shortly after investing the $10,000,000.00 in a Trust Account with First Security Bank, Defendant SCG International, LLC directed Trust Officer Thad Campbell to invest the funds with a Moderate Growth objective.  *See* Campbell Dep. at 35:1-21.

19.     At the time SCG set up the Trust Account with First Security Bank, funds invested with a higher risk objective were outperforming the lower risk alternatives.  *See id.* at 11:1-19; 53:14-54:25.

20.     During the time all or portions of the $10,000,000.00 was invested in a Trust Account with First Security Bank, the account experienced losses totaling $1,709,520.19.  These losses were directly attributable to the economic downturn experienced in the stock markets.  *See* First Security Bank Account Statement, attached at Exhibit 5.

21.     In an effort to recoup funds lost in the Trust Account at First Security Bank, on April 23, 2008, Defendant SCG International, LLC directed that $5,000,000.00 be transferred to an investment account with Credit Suisse.  *See* Deposition of James Frank Smith, Jr. at 108:13-19; 133:2-8, attached at Exhibit 6.

22.     Chain Bridge, LLC purchased land for a training facility near Holly Springs, Mississippi for $600,000, tendering $60,000 as a down payment.  *See id.* at 13:10-14:13.

23.     SCG invested at least $1,699,233.41 of the funds received under the Promissory Note in building a training facility located near Holly Springs, Mississippi.  *See* Transaction by Account Listing (Bates No. SCG 00001), attached at Exhibit 7.

24.     Due to the economic downturn in the economy experienced after the execution of the November 14, 2007 Promissory Note, including downturns in both the stock markets and real estate markets, Defendant SCG International, LLC has been unable to meet its obligations under the Promissory Note.

25.      Plaintiffs' Amended Complaint contains five counts, including:

I.      Fraud (All Defendants);

II.     Conversion (All Defendants);

7

III.    Breach of Fiduciary Duty (All Defendants);

IV.    Unjust Enrichment and Constructive Trust (All Defendants); and

V.    Breach of Contract (SCG).

Amended Complaint ¶¶ 36-53.  The Court granted Defendants Motion to Dismiss Counts II and
IV of the Amended Complaint.  *See* Docket No. 88.

26.    Following receipt of the funds under the Promissory Note, SCG International,
LLC continued to generate income from other sources.  *See* Smith Dep. at 93:20-94:9; 153:18-
155:7.

27.    Chain Bridge, LLC purchased a resort rental property in Hawaii with a $500,000
down payment.  The concept was to rent this property for a period of time and then resell it once
the market recovered for a substantial gain.  Instead, the entire $500,000 was lost.  *See id.* at
10:12-11:16; 12:6-13:6; 130:20-131:9.

28.    SCG invested the funds received under the Promissory Note with the intent to
repay the Promissory Note.  *See id.* at 124:5-17.

29.    SCG loaned funds received under the Promissory Note to sister companies (which
were "ongoing commercial enterprises") in order to receive a return that would permit SCG to
repay the Promissory Note.  *See id.* at 80:14-82:8; 136:13-138:22; 139:21-140:6; 156:5-23.

30.    At least one of the sister companies (SCG, LLC) attempted to repay some of the
funds that SCG International, LLC loaned it.  *See id.* at 102:5-13.

### III.    Legal Standard

#### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

To avoid summary judgment, a plaintiff must present "specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted; emphasis in original); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  "A trial, after all, is not an entitlement.  It exists to resolve what reasonable minds would recognize as real factual disputes."  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985); *see Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993); *Guinness PLC v. Ward*, 955 F.2d 875, 883 (4th Cir. 1992); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Estate of Kimmell v. Seven Up Bottling Co. of Elkton, Inc.*, 993 F.2d 410, 412 (4th Cir. 1993) (nonmovant must show "specific" facts justifying a trial).  Because there are no genuine issues for trial with respect to Counts I (Fraud), III (Breach of Fiduciary Duty), and Defendants' affirmative defenses to Count V (Breach of Contract), the Court should grant Defendants' motion for summary judgment.

#### B.    Contracts entered for an improper purpose and with unclean hands.

A court cannot enforce a contract that is contrary to public policy or was entered for an improper or illegal purpose.  *See Morris-Griffin Corp. v. C & L Serv. Corp.*, 731 F. Supp. 2d 488, 496 (E.D. Va. 2010).  This includes contracts entered into in bad faith toward the rights or policies of a third party.  *Id.*  This is true even if the underlying contract is itself not unlawful.  *Id.*

Plaintiffs seek equitable relief with their Breach of Fiduciary Duty count. *See, e.g.,*
*Phillips v. The Brink's Co.*, 632 F. Supp. 563, 568-69, 575 (W.D. Va. 2009) (breach of
fiduciary duty is equitable in nature); *Broadnax Mills, Inc. v. Blue Cross & Blue Shield*, 876 F.
Supp. 809, 816 (E.D. Va. 1995) (same). But "he who seeks equity must do equity." *Bowen v.*
*Hockley*, 71 F.2d 781, 783 (4th Cir. 1934). "He . . . must come with clean hands . . . . [T]he
complainant seeking equitable relief must not himself have been guilty of any inequitable or
wrongful conduct with respect to the transaction or subject matter sued on." *Cline v. Berg*, 639
S.E.2d 231, 233-34 (Va. 2007). "The doctrine of unclean hands is an equitable doctrine that
allows a court to withhold equitable relief if such relief would encourage or reward illegal
activity." *Morris-Griffin*, 731 F. Supp. 2d at 490 (quoting *United States v. Felici*, 208 F.3d 667,
670-71 (8th Cir. 2000)). Unclean hands "closes the door of a court of equity to one tainted with
inequitable or bad faith relative to the matter in which he seeks relief, however improper may
have been the behavior of the defendant." *Id.* at 502 (quoting *ABF Freight Sys., Inc. v. NLRB*,
510 U.S. 317, 329-30 (1994)). A court invokes this doctrine not for a party's protection, but for
its own. *Id.* (citing *Mas v. Coca-Cola*, 163 F.2d 505, 507 (4th Cir. 1947)). To invoke the
doctrine, there must be "a close nexus between a party's unethical conduct and the transaction on
which that party seeks relief." *In re Uwimana*, 274 F.3d 806 (4th Cir. 2001).

### C.     Both Virginia and Pennsylvania follow the economic loss rule.

The economic loss rule states that "losses suffered as a result of the breach of a duty
assumed only by agreement, rather than a duty imposed by law, remain the sole province of the
law of contracts." *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004) (citation omitted). "[W]hen
a plaintiff alleges and proves nothing more than disappointed economic expectations, the law of
contracts, not the law of torts, provides the remedy for such economic losses." *Id.* (citations

omitted).  "Pennsylvania law is hostile to the recovery of economic losses in tort, at least where there is a lack of contractual privity, and there is not even a nuclear accident exception to this economic loss rule."  *Grode v. Mut. Fire, Marine, and Inland Ins. Co.*, 623 A.2d 933, 934 (Pa. Commw. Ct. 1993) (citation omitted).

When the parties' relationship is based solely upon a contract, for tort liability to exist, the plaintiff must show that there is an independent common law duty between the parties. *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998).  "To avoid turning every breach of contract claim into a tort claim, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'"  *Combined Ins. Co. v. Wiest*, 578 F. Supp. 2d 822, 831-32 (W.D. Va. 2008) (quoting *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)).

### D.    A borrower does not have a fiduciary duty to a lender.

Absent extraordinary circumstances, a borrower does not have a fiduciary duty to a lender.  *See Rossmann v. Lazarus*, No. 1:08cv316, 2009 WL 87583, *9 (E.D. Va. Jan. 9, 2009) (citing *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 678-79 (S.D.N.Y. 1991), *aff'd*, 962 F.2d 1 (2d Cir. 1992)).  This is true because borrowers and lenders are necessarily on the opposite sides of the negotiating table.  *Id.* (citing *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1998)).

### E.    Parol evidence cannot be used when the contract is unambiguous.

"Parole evidence may not be used to contradict the express terms of a contract or written agreement."  *In re Nelco, Ltd.*, 264 B.R. 790, 804 (E.D. Va. 1999) (citing *Swengler v. ITT Corp.*, 993 F.2d 1063, 1069 (4th Cir. 1993)).  "Only where a contract is ambiguous may a court resort to parole evidence to ascertain the true intention of the parties entering the contract."  *Id.* at 804-

05 (citing *Aetna Cas. & Sur. Co. v. Fireguard Corp.*, 455 S.E.2d 229, 232 (Va. 1995)).  And if

the "intent of the parties can be determined from the language they employ in their contract,

parol evidence respecting their intent is inadmissible."  *Golding v. Floyd*, 539 S.E.2d 735, 737

(Va. 2001).

###### F.    Piercing the corporate veil is disfavored in Virginia.

"The decision to ignore the separate existence of a corporate entity and impose personal

liability upon shareholders for debts of the corporation is an extraordinary act to be taken only

when necessary to promote justice."  *Dana v. Freemason, A Condominium Assoc., Inc.*, 587

S.E.2d 548, 553 (Va. 2003) (quoting *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 580 S.E.2d 806,

809 (Va. 2003)).  It is justified only "when the unity of interest and ownership is such that the

separate personalities of the corporation and the individuals no longer exist and to adhere to that

separateness would work an injustice."  *Id.* at 554 (citations omitted).  The Virginia Supreme

Court "has been very reluctant to permit veil piercing."  *C.F. Trust, Inc.*, 580 S.E.2d at 810.

Further, the general rule in Virginia is that "no direct action lies to a creditor of a corporation

against its directors . . . for improper performance or failure in performance of their duties."

*Bank of Am. v. Musselman*, 222 F. Supp. 2d 792, 797 (E.D. Va. 2002) (quoting *Anderson v.

Bundy*, 171 S.E. 501, 508 (Va. 1933)).  Moreover, "the Fourth Circuit has held that 'only in

extraordinary circumstances are directors liable for corporate debts  . . . [as t]here is a strong

public policy of shielding directors from individual liability for corporate debts."  *Id.* (quoting

*Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 534-35 (4th Cir. 1998)).

# IV.   Argument

## A.   Plaintiffs' fraud claim lacks evidentiary support.

Not only does Plaintiffs' fraud claim lack evidentiary support, the record evidence contradicts that claim.  For example, in Paragraph 5 of the Amended Complaint, Plaintiffs allege that Defendant Smith falsely represented that he graduated from Harvard Law School, was formerly employed by the CIA, was a former director with Blackwater USA, and that SCG held over $50 million in government contracts.  But there is no evidence in the record that any of these statements were false.  And at his deposition, Plaintiffs failed to ask Smith a single question regarding any of these allegations.  In reality, Smith did attend Harvard Law School, was employed by the CIA, was a former director with Blackwater USA, and SCG had millions of dollars in government contracts.[4]  Thus, any perceived fraudulent inducement lacks evidentiary support.[5]

Likewise, the record lacks any evidence of the following accusations from the Amended Complaint:

- That Smith stated the source of the funds invested with First Security Bank were from a Department of Defense payment.  Amended Complaint ¶ 11.

- The sole purpose of the Smiths obtaining charge cards from First Security Bank was to enable them to live off the Sanfords' money.  *Id.* ¶ 14.

- That SCG employees' (including Smith) personal travel was paid for by SCG.  *See, e.g., id.* ¶ 18.

---

[4] The difference between Smith having attended Harvard Law School as opposed to graduating from Harvard Law School (he actually graduated from Regent University School of Law) cannot possibly have induced Plaintiffs to have entered the Promissory Note.

[5] Count I of the Amended Complaint is for Fraud and not Fraud in the Inducement.  However, to the extent the Court considers Count I broad enough to include inducement, there is no evidentiary support for such allegations.

- That neither Smith nor SCG had any intent to keep the funds from the Promissory Note in a separate account or to repay the Note. *Id.* ¶¶ 23, 34.

- That money had not been lost in the stock market, when in fact it had. *Id.* ¶¶ 28-29.

- That Smith and SCG were operating a "sham investment scheme." *Id.* ¶ 33.

Instead, the evidence shows that SCG set up a separate trust account and placed the majority of the funds received under the Promissory Note in that account. Had the economy continued to perform as it had over the past decade, the growth in the trust account would have permitted repayment of the Note. And when it became obvious that the trust account would not achieve that result, SCG took proactive measures, admittedly with greater risk, in an effort to recoup the losses previously incurred in the stock market through the trust account.

Moreover, the fact that Smith took nominal amounts of money out of SCG for personal expenses is only natural, as SCG is a single-member Limited Liability Company, with Smith as its only member. Smith, as CEO of SCG, was entitled to compensation from this pass-through entity. There is nothing improper from his earning a salary from SCG and there is no evidence in the record that his compensation from SCG was excessive in light of his responsibilities.

Because Plaintiffs' Fraud Claim lacks evidentiary support, summary judgment dismissing the count is appropriate.

**B.      No fiduciary relationship existed between the Plaintiffs and the Defendants.**

As the Promissory Note clearly states, the relationship between Plaintiffs and Defendants SCG is one of "lender" and "borrower." As the parties only met shortly before the Promissory Note was executed, there is no long-standing relationship that would create any additional duties. And there are no other agreements between the parties other than the Promissory Note between Plaintiffs and SCG. The law is clear, absent exceptional circumstances, which do not exist here,

there is no fiduciary duty between a borrower and a lender.  *See Rossmann*, 2009 WL 87583, *9.

As such, summary judgment for Count III is appropriate.

### C.   The economic loss rule, followed by both Pennsylvania and Virginia, prohibits converting contract claims into tort claims.

Under the economic loss rule, because Plaintiffs' relationship with either Defendant SCG or Smith is based solely in contract (i.e., the Note), Plaintiffs cannot pursue tort remedies for acts constituting a breach of contract.  Absent the Note, Plaintiffs would not have forwarded $12,500,000 to SCG.  The Note is the sole basis of the parties' relationship.  SCG has no additional duties to Plaintiffs outside the Note.  And Smith has no duties at all to the Plaintiffs, as he has never been in privity with the Plaintiffs.

Both Pennsylvania, where the Plaintiffs reside, and Virginia, where the Defendants reside, follow the economic loss rule.  *See Grode*, 623 A.2d at 934 (Pennsylvania); *Filak*, 594 S.E.2d at 613 (Virginia).  Counts I and III of the Amended Complaint sound in tort.  As such, the economic loss rule prevents Plaintiffs from any recovery other than in contract under the Note. Defendants respectfully ask the Court to grant summary judgment on Counts I and III.

Plaintiffs also cannot use parol evidence to either add duties to the Note or to create non-contractual duties.  For example, Plaintiffs claim that they were offered a guaranteed annual return of 10% on any principal invested.  Amended Complaint ¶ 6.  But the Note itself specifies unambiguously that the interest rate is .1% per annum.  *See* Promissory Note (Ex. 1).  Because the Note is unambiguous with respect to the interest rate, any parol evidence regarding interest rates cannot be considered.  And contrary to the allegations of ¶ 7 of the Amended Complaint, the Note makes no promises about or references to the funds being segregated or protected in a tax-free account, safe from creditors.  Had the Plaintiffs wanted those provisions in the Note,

they were certainly free to negotiate such terms.  They did not.  All such parol evidence,

therefore, should be excluded.

     **D.**     **Plaintiffs cannot hold Smith personally liable as he is protected by SCG's**
                **corporate veil.**

     Defendant Smith is not a party to the Note.  *See* Promissory Note (Ex. 1).  It is clear from

the signature page that Smith signed the Note solely in his capacity as CEO of SCG.  Smith is

thus protected by SCG's corporate veil.  Smith has no other relationship with the Plaintiffs.  He

did not personally guarantee the Note.  And Plaintiffs have not moved to pierce SCG's corporate

veil nor have they provided the evidence required for such a disfavored action in Virginia.  *See*

*C.F. Trust, Inc.*, 580 S.E.2d at 810.  Because Smith is not in privity with the Plaintiffs, there is

no basis for him being a defendant to this lawsuit.  As such, Defendants respectfully ask the

Court to grant summary judgment to Defendant Smith on all counts.

     **E.**     **The Court cannot enforce a contract entered for an improper purpose and**
                **with unclean hands.**

     Plaintiffs entered into the Promissory Note with SCG in an effort to avoid a judgment in

Pennsylvania.  *See* Undisputed Fact #15.  Without question, efforts to secret funds away from the

judgment of a sister court violates public policy and may be unlawful.  Plaintiffs' hands,

therefore, before this Court are unclean.

     If this Court were to enforce the Note at issue in this case, it would essentially reward

Plaintiffs' efforts to avoid a foreign judgment.  For that very reason, courts refuse to enforce

contracts, such as the Note in this case, which are contrary to public policy or were entered into

for an improper or illegal purpose.  *See Morris-Griffin Corp.*, 731 F. Supp. 2d at 496.  As such,

the Court should deem the Note void and grant Defendants summary judgment on Count V

(Breach of Contract) of the Amended Complaint.

Plaintiffs' unclean hands further bar the recovery of any equitable relief.  To obtain equitable relief, Plaintiffs must come before the Court with clean hands.  *See Cline*, 639 S.E.2d at 233-34.  Plaintiffs' Count III (Breach of Fiduciary Duty) is equitable in nature.  Thus, because of Plaintiffs' unclean hands, they cannot recover under Count III.  Therefore, Defendants respectfully ask the Court to grant Defendants summary judgment on Count III.

## V.      Conclusion

For the reasons stated herein, Defendants James F. Smith, Jr. and SCG International, LLC respectfully ask this Court to grant their motion for summary judgment.

Dated:   May 6, 2011                                         Respectfully submitted,

**SCG INTERNATIONAL, LLC**
**JAMES F. SMITH, JR.**

       /s/ Brent L. VanNorman
Brent L. VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, Virginia  23510
Telephone:  (757) 640-5343
Facsimile:  (757) 625-7720
bvannorman@hunton.com

*Counsel for SCG International, LLC &*
*James F. Smith, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May, 2011, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing to the following counsel of record:

J. Chapman Petersen (VSB #37225)
Jason Zellman (VSB #77499)
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Suite 200
Fairfax, Virginia  22030
Telephone:  (703) 251-5400
Facsimile: (703) 591-9285
jpetersen@smillaw.com
jzellman@smillaw.com

*Counsel for Plaintiffs*


_____/s/ Brent L. VanNorman_____
Brent L. VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, Virginia  23510
Telephone:  (757) 640-5343
Facsimile:  (757) 625-7720
bvannorman@hunton.com

*Counsel for Defendants*
*SCG International, LLC and*
*James F. Smith, Jr.*